UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )( | |
| )( | Criminal No. 06-200-01 |
| v.         )( | Judge Kollar-Kotelly |
| )( | Sentencing: May 23, 2007 |
| ADAM HAMILTON         )( | |

MEMORANDUM IN AID OF SENTENCING

     COMES NOW the defendant, Adam Hamilton, by and through undersigned counsel, and respectfully submits this memorandum to aid the Court in deciding what sentence to give him. Accordingly, Mr. Hamilton would show:

     1.     On January 13, 2007, Adam Hamilton pled guilty to one count of being a felon in possession of a firearm (18 U.S.C., Section 922(g)(1)) and one count of violating the District of Columbia's Bail Reform Act (23 D.C. Code, Section 1327(a)). Because Mr. Hamilton has three prior convictions for burglary-type offenses, he qualifies as an armed career offender and is therefore subject to a mandatory minimum sentence of fifteen years and a maximum sentence of life on the felon in possession count. 18 U.S.C., Section 924(e). For the Bail Reform Act violation, Mr. Hamilton is subject to a minimum sentence of 90 days and a maximum sentence of 180 days. 23 D.C. Code, section 1327(a)(2). This sentence must be made to run consecutively with any other sentence. 23 D.C. Code, Section 23-1327(d). Sentencing is set for May 23, 2007.

     2.     The conduct at issue in the felon in possession count occurred on June 8, 2006. On that day, several firearms were found in the pick-up truck that Mr. Hamilton was driving. At the time of his arrest, Mr. Hamilton gave a statement to the police in

which he acknowledged his possession of the guns.  Additionally, Mr. Hamilton has readily admitted his guilt and accepted responsibility before the Court.

      3.      While Mr. Hamilton has a lengthy criminal history, it must be emphasized that all of his convictions are related to his addiction to drugs—especially to heroin.  Out of the thirteen convictions listed in the Pre-Sentence Investigation (PSI) Report, seven are for theft offenses, and three are for burglary-type offenses.  PSI Report at 7-13.  This is because Mr. Hamilton has a history of stealing to support his drug habit.  The fact that all of Mr. Hamilton's convictions are drug-related is not being pointed out to make excuses for Mr. Hamilton's behavior.  Rather, it is being pointed out because it is factually true and something that needs to be understood if the Court is to have a clear picture of who Mr. Hamilton is.

      4.      Mr. Hamilton is thirty-five years old, and it appears that he has already spent approximately ten years of his adult life behind bars for crimes he committed to support his drug addiction.  Mr. Hamilton is an intelligent, articulate, and personable man.  According to everyone undersigned counsel has spoken to about Mr. Hamilton and even according to counsel's own observations, when Mr. Hamilton is not in the throes of his drug addiction, he is honest and dependable.  Mr. Hamilton was raised in Montgomery County, Maryland with a solidly middle-class upbringing.  If Mr. Hamilton were not addicted to drugs or if he had managed to successfully treat his addiction early on, in all likelihood, his life would have gone in an entirely different direction than it did.  While Mr. Hamilton has undoubtedly harmed many others because of his drug-addiction, the devastation that he has wreaked on his own life is also considerable.

5.     The reason that Mr. Hamilton possessed the guns at issue in this case is because his accomplice stole the guns while Mr. Hamilton and the accomplice were burglarizing a house to get items to sell for money for drugs.  Mr. Hamilton became aware of the guns' existence when he and his accomplice were loading the various items they had stolen from the residence into Mr. Hamilton's pick-up truck just before leaving the scene.  A few hours after the burglary, Mr. Hamilton and his accomplice (and a third person they had just picked up) were all in Mr. Hamilton's truck, transporting the guns to find a place to sell or pawn them.  This is when the police stopped the truck and ended up arresting Mr. Hamilton and his two companions.  PSI Report at 4.  It must be emphasized that Mr. Hamilton never possessed the guns with the intent of using them as weapons.  Indeed, Mr. Hamilton professes a dislike of guns and states that he has never used a gun or even just armed himself with one in the past.  To Mr. Hamilton, the guns at issue here were nothing more than commodities that could be sold to get money for drugs.  As such, they meant no more to him than jewelry or a VCR.

6.     If a person convicted of being a felon in possession of a firearm has three prior convictions for a "violent felony," he is classified as an armed career offender and must be given a mandatory minimum sentence of fifteen years.  18 U.S.C., Section 924(e)(1).  As already stated, Mr. Hamilton has three prior convictions for burglary-type offenses.  Burglary-type offenses are considered to be violent felonies for the purposes of the armed career offender provision. 18 U.S.C., Section 924(e)(2)(B); <u>United States v. Jackson</u>, 113 F.3d 249, 252-53 (D.C. Cir. 1997).  Accordingly, Mr. Hamilton must now be given a minimum sentence of fifteen years.

7. While a burglary-type offense is classified as a violent felony for the purposes of the armed career offender statute, it should be noted that there is no evidence that anyone was ever present in the houses that Mr. Hamilton broke into. PSI Report at 7-8, 11. Mr. Hamilton states that he was terrified at the prospect of encountering someone in the houses during the break-ins and that he therefore only broke into the houses in the daytime after he had made sure that no one was home. Moreover, there is no evidence that Mr. Hamilton ever used a weapon during any of the break-ins. Indeed, apart form the instant offense, there is no evidence that Mr. Hamilton ever possessed a weapon during a break-in, and even in the instant case, it must be emphasized again that he only possessed the guns at issue because his accomplice decided to steal them from the residence while the break-in was occurring so that she and Mr. Hamilton could sell them for money for drugs.[1]

8. In May of 2005, Mr. Hamilton was paroled after serving five years on a conviction in Maryland. When he came out, Mr. Hamilton got a job as a Maintenance Assistant at Bethany House, a retirement facility for people needing a certain amount of medical attention. The job came with an apartment. Mr. Hamilton had been clean while in prison, and not being in the throes of his drug addiction, he was able to do well at his job, even saving enough money to buy a new pick-up truck. His mother reports that Mr. Hamilton was well-liked by the residents of Bethany House because he always took time to talk with them and do favors for them. In early 2006, however, Mr. Hamilton relapsed and started using heroin again. Eventually, he lost his job and his apartment, and he

---

[1] The PSI Report notes, that in 1993, the police responded to a location while Mr. Hamilton and accomplice were inside the house robbing it. The police then discovered a knife in a car in which an apparent second accomplice was waiting. PSI Report at 8. However, if in fact it is believed that Mr. Hamilton and the person who broke into the house with him were aware of the knife in the car, then it must also be acknowledged that they affirmatively chose to leave the knife behind while they committed the break-in.

4

ended up being arrested on misdemeanor drug charges that were brought in the Superior Court for the District of Columbia. At this time, the drug tests that were being done on Mr. Hamilton by his parole officer in Maryland and by the Pre-Trial Services Agency in his pending Superior Court cases were consistently dirty for heroin. Mr. Hamilton reports that he was working with his parole officer to get into drug treatment through the parole system. However, the process was taking too long, so Mr. Hamilton got himself into drug treatment with the insurance that he still had from his previous employment at Bethany House. Unfortunately, the insurance company would only authorize out-patient treatment. While Mr. Hamilton was in that out-patient treatment, he was arrested on a warrant that had issued in one of his Superior Court cases for a failure to appear. After he was arrested, Mr. Hamilton was held for ten days and then released. By then, he had been terminated from his out-patient treatment. This was at the end of May or the beginning of June, 2006. On June 8, 2006, Mr. Hamilton was arrested in this case, and he has been held without bond ever since.

      9.      While Mr. Hamilton was in the process of dealing with his misdemeanor drug cases in Superior Court, the Administrator at Bethany House sent a letter in support of Mr. Hamilton to the attorney that was representing him in his Superior Court cases. Remarkably, at the time that the letter was sent, the Administrator had already fired Mr. Hamilton. A copy of this letter is attached. Attachment One, Letter from Kevin L Chambers. Also attached are two letters that have been sent to undersigned counsel. One letter is from an attorney in Maryland who has represented Mr. Hamilton in the past. Attachment 2, Letter from James F. Shalleck, Esq. The other letter is from Mr. Hamilton's mother. Attachment 3, Letter from Theresa Ringler. The common theme of

all these letters is that, "[w]hen Adam is clean, he is an honest, compassionate, and hard-working man." See Attachment One, Letter from Kevin L Chambers. Undersigned counsel shares this impression of Mr. Hamilton as well.

10. Under the Sentencing Guidelines, Mr. Hamilton's adjusted offense level is either a 30 or a 31. The issue comes down to whether or not the Court finds that he possessed the guns at issue in this case "in connection with… a crime of violence"—that is, the burglary in which the guns were stolen—for the purposes of U.S.S.G., Section 4B1.4(b)(3). If it is found that Mr. Hamilton did so possess the guns "in connection with" the burglary, his offense level, before his three-point downward adjustment for acceptance of responsibility, is 34. U.S.S.G. Section 4B1.4(b)(3)(A). However, if it is found that he did not so possess the guns in connection with the burglary, his unadjusted offense level is 33. U.S.S.G., Section 4B1.4(b)(3)(B).

11. Mr. Hamilton's criminal history places him in Category VI. PSI Report at 13. Accordingly, if his adjusted offense level is 31, his guideline range is 188-235 months. If his adjusted offense level is 30, his guideline range is 168-210 months. However, since Mr. Hamilton must be sentenced to at least fifteen years, it is more accurate to say that this guideline range is really 180-210 months. See U.S.S.G., Section 5G1.1(c)(2).

12. The Court should find that Mr. Hamilton's unadjusted offense level is 33 (and that his adjusted offense level is therefore 30) on the grounds that he only came to possess the guns at issue here by virtue of the very crime (the burglary) for which the higher offense level would be applied. It is improper to give the enhanced offense level of 34 where the crime for which that enhanced level is being applied is the very crime by

6

which the guns came to be possessed in the first place. In support of this position, Mr. Hamilton would refer the Court to the analogous enhancement provision contained in U.S.S.G., Section 2K2.1(b)(5) and the way that that provision has been interpreted by other courts and modified by the Sentencing Commission. Under U.S.S.G., Section 2K2.1(b)(5), a defendant being sentenced as a felon in possession of a firearm is given a four-point increase in his offense level if he possessed the firearm "in connection with another felony." Several courts have found that to give the four-point enhancement in situations where a defendant steals the guns during a burglary would result in impermissible double counting because the firearms only came to be possessed because of the burglary for which the enhancement provision would be applied in the first place. United States v. Fenton, 309 F.3d 825, 827-28 (3d Cir. 2006) (where guns were stolen in burglary of sporting goods store, four-point enhancement is improper); United States v. Szakacs, 212 F.3d 344, 348-53 (7th Cir. 2000) (where guns were stolen in robbery of gun shop, four-point enhancement is improper) United States v. McDonald, 165 F.3d 1032, 1037 (6th Cir. 1999) (where guns were stolen in burglary of pawnshop, four point enhancement is improper; also the danger the enhancement provision was attempting to address was the danger created when a person intentionally arms himself before committing a felony); United States v. Sanders, 162 F.3d 396, 399-402 (6th Cir. 1998) (where guns were stolen from firearms dealer, four-point enhancement is improper). Evidently in response to these opinions, the Sentencing Commission in 2006 added application note 14(B) to U.S.S.G., Section 2K2.1, making it clear that the four-point enhancement provision was to be applied even "in a case in which a defendant who, during the course of a burglary, finds and takes a firearm." Interestingly, while this

7

application note was added to U.S.S.G., Section 2K2.1, no similar application note was ever added in regards to its counterpart in U.S.S.G., Section 4B1.4. It is submitted that, if the Sentencing Commission intended for an armed career offender to be given the higher offense level even if he only acquired the guns by committing the very crime for which the enhancement would be applied, it would have added an application note to U.S.S.G., Section 4B1.4 saying so—just like it did in the 2K2.1 context. In the absence of such an application note, the Court should presume that the Sentencing Commission did not mean for an armed career offender to be given the higher offense level if only he acquired the guns during the commission of the crime for which the higher offense level would otherwise be applied.

       13.     Another reason the Court should find that Mr. Hamilton's unadjusted offense level is 33 and not 34 is that, to do otherwise, would result in treating someone who steals a gun because he happens upon it during the commission of a burglary just the same as someone who deliberately arms himself for the purposes of committing the burglary. It is submitted that the latter person is contemplating significantly more sinister conduct than the former, and it is unlikely that the Sentencing Commission would have intended that these two persons be punished essentially the same. It is worth repeating at this point that the guns were acquired by Mr. Hamilton as a result of the burglary and that Mr. Hamilton did not even become aware of the guns until after he and his accomplice had finished burglarizing the house and were loading the items that each of them had stolen into Mr. Hamilton's truck.

       14.     Whatever offense level the Court finds to be applicable to Mr. Hamilton's conduct, the Court should sentence Mr. Hamilton to no more than the statutory

8

mandatory minimum of fifteen years. If Mr. Hamilton's adjusted offense level is 30, this would be a guideline-compliant sentence, and if his adjusted offense level is 34, this would still only be eight months less than the low end of his guideline range. The reason the Court should give Mr. Hamilton the minimum sentence possible for being an armed career offender is that his situation is different from that of the typical armed career offender. Unlike the career offender who takes possession of firearms for the purposes of arming himself, Mr. Hamilton only took possession of the guns at issue in this case because he wanted to sell or pawn them for money for drugs. To him, they were not weapons but commodities. This is not meant to downplay the seriousness of Mr. Hamilton's conduct. It is simply submitted that the already very severe sentence of fifteen years is adequate given the particular circumstances of this case.

15.    Even if the Court does find that the higher offense level of 34 does apply (and that Mr. Hamilton's guideline sentence, after adjustments, is therefore 188-235 months), the Court should nevertheless sentence him outside that guideline range and still give him 180 months. Even if the higher guideline range of 188-235 months is technically applicable to Mr. Hamilton's situation, a sentence of fifteen years is still a more accurate reflection of the seriousness of his conduct. As already stated, Mr. Hamilton did not arm himself in order to effectuate the burglary and he never possessed the guns with any intent of using them as weapons. Whatever possession of the guns Mr. Hamilton did have during the commission of the burglary was because his accomplice stole those guns while the robbery was occurring so that she and Mr. Hamilton could sell them for money for drugs. Mr. Hamilton did not even become aware of the guns until after he and his accomplice had finished burglarizing the house and were loading the

items that each of them had stolen into Mr. Hamilton's truck. While in a legally technical sense it might be said that Mr. Hamilton possessed the guns in connection with the burglary for the purposes of placing him at the higher offense level, it must be acknowledge that Mr. Hamilton's situation is nevertheless different than that of the person who is placed at that same offense level because he armed himself prior to the commission of the crime for the purpose of effectuating the crime. Also, it should be noted that even if the Court were to give Mr. Hamilton the sentence of fifteen years that he is asking for, the Court would still be treating Mr. Hamilton's offense quite seriously. Of course, if the Court sees fit to give him a sentence in the 188-235 month range, Mr. Hamilton requests that it be at the low end of that range.

      16.    Under 18 U.S.C., Section 3353(a), the Court is to fashion a sentence that takes into account "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C., Section 3553(a)(1). Additionally, the Court is to take into account "the need for the sentence imposed… to reflect the seriousness of the offense." 18 U.S.C., Section 18 3553(a)(2)(A). In light of these considerations, it is submitted that, for the reasons already stated, a sentence greater than the mandatory minimum of fifteen years is not warranted. Additionally, a sentence of fifteen years will satisfy all the factors the Court is to consider under 18 U.S.C., Section 3553(a). This seems especially true in respect to 18 U.S.C. Section 3553(a)(2)(B) (affording adequate deterrence to criminal conduct) and to 18 U.S.C., Section 3553(a)(2)(C) (protecting the public from further crimes of the defendant). The Court, of course, has an obligation to consider the guideline range that is applicable to Mr. Hamilton's situation. 18 U.S.C., Section 3553(a)(4). However, even if he Court were to find that Mr. Hamilton's

guideline range is 188-235 months, the Court should still sentence Mr. Hamilton outside that range to fifteen years because a sentence in that range fails to take into account the factors discussed above that call for somewhat more lenient treatment.

17.     Finally Mr. Hamilton requests, in the strongest fashion, that the Court recommend that he get drug treatment while he is incarcerated.  Particularly, he asks that the Court recommend that he participate in the 500-hour Residential Drug Abuse Program (RDAP) that is offered in many federal facilities.  Many defendants ask to be placed in this program because it can result in the Bureau of Prisons giving them up to a year reduction in their sentence.  This is not why Mr. Hamilton is asking the Court to recommend the program.  Indeed, because of his prior record, Mr. Hamilton is not even eligible for the reduction.  Mr. Hamilton asks the Court to recommend the program for the simple reason that he knows he needs long-term drug treatment and that must genuinely address his drug problem if he is to salvage the remainder of his life.

## **CONCLUSION**

Mr. Hamilton's is a drug addict who broke into a home to steal whatever he could find to get money for drugs.  During the burglary, his accomplice stole some guns, and Mr. Hamilton helped her load them onto his pick-up truck before they left the scene. To Mr. Hamilton the guns were nothing more than commodities that could be sold or pawned for money for drugs, and he never intended to use them as weapons or to arm himself with them.  In the eyes of the law, however, guns are not just commodities.  Mr. Hamilton's possession of the guns made him a felon in possession of a firearm. Worse yet, because he has three prior burglary-type convictions, it made him an armed career offender who must be given a mandatory minimum sentence of fifteen years.  Moreover,

Mr. Hamilton faces a potential sentence of life and a potential guideline-compliant sentence of 188-235 months. Mr. Hamilton has engaged in serious criminal activity and he deserves to be punished. He has undoubtedly caused significant harm to others. Moreover, the devastation that he has wreaked on his own life is also considerable. Mr. Hamilton has been incarcerated for almost a year now and, and because he is not actively in the throes of his drug addiction, he is a very different man than he was when he committed the crime. It is hard to see how a sentence of fifteen years will not, with unignorable finality, impress upon him the seriousness of his conduct and demonstrate to him that drug-addiction is not an excuse for engaging in criminal activity. Moreover, it is hard to see how a sentence of fifteen years can fail to make Mr. Hamilton see the extent to which he has let his drug-addiction destroy his life. Accordingly, it is submitted that a sentence of fifteen years is sufficient and just on the felon in possession of a firearm charge.

     WHEREFORE, the defendant, Adam Hamilton, respectfully requests that this Honorable Court sentence him fifteen years for being a felon in possession of a firearm. Additionally, Mr. Hamilton asks the Court to sentence him to the minimum sentence of 90 days for the violation of the District of Columbia's Bail Reform Act. Finally, Mr. Hamilton asks that the Court recommend that he get drug treatment while he is incarcerated—including the 500-hour Residential Drug Abuse Program.

                            Respectfully submitted,

                            ____/s/_____
                            Jerry Ray Smith
                            Counsel for Adam Hamilton
                            717 D Street, N.W.
                            Suite 400
                            Washington, D.C. 20004
                            Phone: (202) 347-6101